# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVALIN CHARLES BENNETT,<br>      Petitioner,<br><br> vs.<br><br>STEPHEN A. GLUNT; CATHLEEN<br>CANE, *The Attorney General of the State*<br>*of Pennsylvania,*<br>      Respondents. | Civil Action No. 13-1775<br>Chief Magistrate Judge Maureen P. Kelly |

## **MEMORANDUM OPINION**

Davalin Charles Bennett ("Petitioner"), has filed this pro se Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Petition"), seeking to attack his state court convictions for first degree murder and firearms violations. ECF No. 1. Petitioner was convicted of the December 26, 1997 shooting of Ronald "Nink" Minefield[1] outside of the Alpine Tavern.[2] Petitioner was sentenced to life in prison without parole for the first degree murder conviction.

For the reasons that follow, the Petition will be denied because none of the three Grounds for Relief merits the grant of habeas relief. Furthermore, because jurists of reason would not find this disposition of the Petition debatable, a Certificate of Appealability will also be denied.

## I.  FACTUAL BACKGROUND

At a Coroner's Inquest, sometimes referred to in the record as a "preliminary hearing", the Commonwealth's star witness, Antoinette "Tiny" Hooten ("Hooten") testified. Shortly after

---

[1] The victim's last name is spelled variously as "Minefield" or "Minnefield" in the record.

[2] The Alpine Tavern is also referred to as the Alpine Bar in the record.

her testimony at the Coroner's Inquest, she was shot and killed. The Post Conviction Relief Act ("PCRA") trial court summarized her testimony as follows:

> … Hooten was shot and killed in May of 1998 approximately three months after testifying at a Coroner's Inquest. Hooten's testimony at the Coroner's Inquest that was admitted at trial was that the Defendant [i.e., Petitioner], who Hooten had known prior to the incident, asked to have the victim leave the Alpine Tavern and meet the Defendant who was waiting outside. When the victim exited the bar, Hooten testified that she saw the Defendant grab the victim by the arm and lead the victim into an alley. When she saw that the Defendant had a silver gun in his hand, she turned away to ask Darrale Gaines [i.e., Hooten's nephew, also referred to as "Razor"] a question. At that point, she heard two shots from the alley where the Defendant and the victim were together.

ECF No. 11-4 at 37, n.4. Hooten's testimony at the Coroner's Inquest was read into the record at Petitioner's trial, which occurred from April 20, 1999 to April 23, 1999. At the trial, another witness, Robert Robinson, testified that he was at the Alpine Tavern on the date of the shooting and saw Petitioner there and spoke with Petitioner who told Robinson that he was trying to get money any way he could. ECF No. 9 at 5 – 6; ECF No. 11-3 at 28. Dr. Robert Levine testified as an expert on ballistics and testified that a stainless steel automatic Smith and Wesson 9mm firearm (Commonwealth Exhibit 34 at trial), which was recovered near a bed in a home where Petitioner had been staying, was the gun that killed the victim. ECF No. 11-3 at 29.

Based upon the foregoing evidence, the jury found Petitioner guilty of first degree murder and two counts of weapons violations. Petitioner was sentenced to mandatory life in prison without the possibility of parole.

## II. PROCEDURAL HISTORY

Petitioner, proceeding pro se, filed the instant Petition, which raised two Grounds for Relief:

> **GROUND ONE:** Petitioner was denied his right to due process which is a violation of the 14th Amendment of the U.S.C.A.

ECF No. 1 at 5.

> **GROUND TWO**: Miscarriage of Justice/Actual Innocence occurred such that no civilized society would've tolerated.

Id. at 7. Petitioner also filed a Brief In Support. ECF No. 3.

Petitioner then filed an "Amendment to Habeas Corpus Petition," ECF No. 8, wherein he added a third Ground for Relief: "Trial court violated petitioner's 6th amendment right to the confrontation clause by allowing testimony of deceased witness [i.e., Hooten] to be heard by jury as evidence." Id. at 1. The Court will refer to the original Petition, ECF No. 1, and the Amendment to Habeas Corpus Petition, ECF No. 8, collectively as the "Petition."

The Court ordered Respondents to respond to all three Grounds for Relief in their Answer. Text Order entered 2/12/2014. Respondents filed an Answer, denying that Petitioner was entitled to any relief. ECF No. 9. Petitioner filed "Petitioner's Reply to Respondent's [sic] Answer of Habeas Corpus Petitioner" (the "Traverse"). ECF No. 14. Thereafter, Petitioner filed several miscellaneous motions whereby he sought the appointment of a special investigator and also sought to further amend his Petition and a motion for an evidentiary hearing and a motion for discovery. In a series of orders, the Court denied these motions. ECF Nos. 24, 26, 28, 30 and 32. All parties have consented to the exercise of plenary jurisdiction by a United States Magistrate Judge. ECF Nos. 12 & 13.

### III. APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because this Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Respondents pointed out in their Answer that Grounds One and Three are untimely under AEDPA. As relevant here, AEDPA requires that state prisoners file their federal habeas petition within one year after their conviction became final.[3] Specifically, AEDPA provides that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> . . . .
>
>   (2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

A habeas respondent has the burden of affirmatively pleading AEDPA's statute of limitations. Hill v. Braxton, 277 F.3d 701, 705 (4th Cir. 2002). However, it is appropriate - where the habeas petitioner has been put on notice of a statute of limitations defense - to place some burden on him or her to show why the petition is not untimely. See, e.g., Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002) ("once a petitioner is given adequate notice and opportunity to respond to allegations that his petition is subject to dismissal pursuant to AEDPA's statute of limitations, petitioner has the burden of providing an adequate response"), *abrogation on other grounds recognized in*, Moreno v. Harrison, 245 F. App'x 606 (9th Cir. 2007). See also Jackson v. Secretary for Dept. of Corrections, 292 F.3d 1347, 1349 (11th Cir. 2002); Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002)("The purpose of requiring the defendant to plead

---

[3] Although AEDPA provides three other potential starting points for the running of its one year limitations period, Petitioner has not argued for the application of any of those three other starting points.

available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed.").

## IV. DISCUSSION

### A. Ground One Fails to Provide a Basis for Granting a Federal Writ of Habeas Corpus.

In Ground One, Petitioner complains that his right to due process was violated by the PCRA trial court when the "Court of Common Pleas failed to thoroughly and properly review petitioner[']s P.C.R.A. petition and the evidence presented in its entirety and instead permitted court appointed counsel to file a withdrawal without research." ECF No. 1 at 5.

Ground One cannot provide a basis for relief in these federal habeas proceedings because such claims of errors in the course of PCRA proceedings cannot serve as a basis for granting the writ of habeas corpus. Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998)("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation. . . . Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment.'"); Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004)("alleged errors in collateral proceedings ... are not a proper basis for habeas relief from the original conviction."). Accordingly, Ground One does not afford a basis for the granting of a writ of habeas corpus in these federal proceedings.

### B. Ground Three Was Procedurally Defaulted and Time-Barred.

### 1. Ground Three was procedurally defaulted.

In Ground Three, Petitioner claims that the trial court erred in admitting the preliminary hearing testimony of Hooten even though she was unavailable given that she was murdered prior to Petitioner's trial. Petitioner raised this very issue in his direct appeal to the Pennsylvania Superior Court after his conviction. ECF No. 11-2. Respondents correctly point out in their Answer, that Petitioner waived this claim. ECF No. 9 at 21. Accordingly, because the claim was waived it was procedurally defaulted and is barred from federal habeas review.

The Pennsylvania Superior Court refused to address this issue on the merits because Petitioner's trial counsel had failed to file a Concise Statement of Matters Complained of On Appeal pursuant to Pa.R.A.P. 1925(b). ECF No. 11-2 at 1 ("However, we need not address Appellant's concerns because his claims are waived. As the trial court observed in its opinion, Appellant has failed to comply with the court's order to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)."). Because the Pennsylvania Superior Court refused to address this issue on the merits based upon an independent and adequate state procedural rule, we find Ground Three to be procedurally defaulted. See, e.g., Ross v. Attorney Gen. of State of Pennsylvania, No. CIV.A. 07-97, 2008 WL 203361, at *6 (W.D. Pa. Jan. 23, 2008) ("Because the rule of waiver for failing to raise an issue in a Concise Statement is both independent and adequate, Petitioner has procedurally defaulted this claim.") (citing Buck v. Colleran, 115 F. App'x 526 (3d Cir.2004) (holding failure to comply with Rule 1925(b) constitutes a procedural default)).

### a. Petitioner fails to show cause and prejudice.

Petitioner may be claiming cause and prejudice so as to excuse his procedural default of Ground Three. In his Traverse, Petitioner argues that he has a right to counsel on his direct appeal to the Pennsylvania Superior Court and asserts that counsel abandoned Petitioner. However, we note that Petitioner's brief in the Superior Court was counseled and he was represented by the Office of the Public Defender. ECF No. 11-2 at 4. Hence, we reject a claim that his counsel abandoned him. Rather, we deem Petitioner to be arguing that his trial counsel was ineffective for failing to file a Pa.R.App.P. 1925(b) statement, resulting in the waiver of his claim, concerning the admission at his trial of Hooten's testimony from the Coroner's Inquest.

We find that this claim of cause in the form of trial counsel's failure to file the Rule 1295(b) Statement was itself procedurally defaulted. Edwards v. Carpenter, 529 U.S. 446, 453, (2000) (holding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). Petitioner could have raised this claim of trial counsel's ineffectiveness for failing to file a Rule 1925(b) Statement in his PCRA petition. While Petitioner did raise this claim of ineffective assistance of trial counsel for failing to file a Rule 1925(b) statement in his pro se PCRA Petition, he abandoned this claim after his PCRA Counsel was granted leave to withdraw upon the filing of the PCRA counsel's Turner/Finley no-merit brief. After the PCRA trial court granted Petitioner's PCRA counsel leave to withdraw, the PCRA trial court issued a Notice of Intention to Dismiss the PCRA Petition, informing him he could proceed pro se or with privately retained counsel. ECF No. 9 at 3; ECF No. 11-1 at 10 – 11. Petitioner was granted additional time to respond to the Notice of Intent to Dismiss. In response, Petitioner filed pro se an Amended PCRA petition and raised therein a claim that his trial counsel was ineffective for failing to file a Rule 1925(b) Statement.

7

ECF No. 11-4 at 1 – 27. However, during his pro se appeal, Petitioner abandoned that claim of trial counsel's alleged ineffectiveness for failing to file a Rule 1925(b) Statement. ECF No. 11-5 at 1 – 11.[4] Accordingly, we find the claim of cause (in the form of trial counsel's ineffectiveness for failing to file a Rule 1925(b) Statement) which Petitioner seeks to use to excuse the procedural default of Ground Three to have itself been procedurally defaulted by Petitioner due to his abandonment of this claim of cause on appeal to the Pennsylvania Superior Court in the PCRA proceedings. Given that this claim of cause was itself procedurally defaulted, it cannot serve as cause to excuse the procedural default of Ground Three, i.e., the claim that the trial court erred in admitting the testimony of Hooten at Petitioner's trial.[5]

### 2. Ground Three violates the AEDPA's one year statute of limitations.

Ground Three is also time barred. Respondents point out in their Answer that this issue should have and could have been raised within one year of the conviction becoming final. 28 U.S.C. § 2244(d). ECF No. 9 at 17. It was not. Petitioner's conviction became final no later than January 20, 2001, i.e., thirty days after the Pennsylvania Superior Court affirmed the conviction and Petitioner did not file a Petition for Allowance of Appeal. Hence, Petitioner

---

[4] Petitioner raised only two issues on his pro se appeal to the Pennsylvania Superior Court in the PCRA proceedings:

> I. The appellant Properly Pled and proved "newly-discovered evidence" claim and, the PCRA court was in error for dismissing the Appellant's P.C.R.A. petition as all claims being time barred.
> II. The court of common pleas did violate appellant's 5th and 14th amendment right under the United States Constitution which guarantees all citizens a right to due process.

ECF No. 11-5 at 6.

[5] To the extent that Petitioner is arguing the miscarriage of justice exception to his procedural default of Ground Three, we address this issue below when we address Ground Two.

8

would have had until January 20, 2002 to timely file the Petition in this Court with respect to Ground Three. Petitioner did not file the instant Petition in this Court until, at the earliest, January 8, 2013, nearly 12 full years after his conviction became final. Thus, Ground Three is time barred.

While it is true that a properly filed PCRA petition could toll that running of the AEDPA statute of limitations, Petitioner did not file his first PCRA petition until July 26, 2011, ECF No. 9 at 3, more than 10 years after his conviction became final and more than 9 years after the AEDPA statute of limitations had already run. Cordle v. Guarino, 428 F.3d 46, 48 n.4 (1st Cir. 2005) ("Under 28 U.S.C. § 2244(d)(2), 'the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted' toward the one-year limitations period. However, Cordle's motion for a new trial was not filed until November 11, 2000, several years after her AEDPA limitations period had already expired. 'Section 2244(d)(2) only stops, but does not reset, the [AEDPA] clock from ticking and cannot revive a time period that has already expired.'"). Hence, we find that Ground Three is time barred.

Having failed to file a timely Petition with respect to Ground Three, and/or having failed to establish cause so as to excuse his procedural default of Ground Three, it remains open to Petitioner to establish a miscarriage of justice so as to excuse both his procedural default and his untimeliness. We next consider Petitioner's claim of a miscarriage of justice as raised in Ground Two.

### C. Ground Two Claim of Actual Innocence Fails to Merit Relief.

In Ground Two, Petitioner claims a "Miscarriage of Justice/ Actual Innocence." ECF No. 1 at 7. Specifically, Petitioner asserts that there was a miscarriage of justice in that he is actually innocent of the first degree murder as demonstrated by several affidavits, only one of which he appears to have presented to the state courts. Petitioner provides to this Court an affidavit of Mr. Darrale Gaines, dated May 3, 2011, when he was, at the time, an inmate in the State Correctional Institution in Somerset ("SCI-Somerset"). Petitioner also provided the Gaines affidavit to the state courts. Gaines averred that he personally saw Hooten, his aunt, shoot and kill the victim. ECF No. 1-3. The affidavits of three other prisoners, that were not presented to the state courts, indicate that Gaines had told them the same story, i.e., Hooten was the one who shot the victim. ECF No. 1-2 (Affidavit of Michael J. Pendleton); ECF No. 1-4 (Affidavit/Letter of Frederick Allen); ECF No. 1-6 (Affidavit of Johnny Harris). We note that this version of the events, i.e. that Hooten shot the victim is different from the version of the events that Gaines had told the police shortly after the shooting, however, Gaines did not testify at Petitioner's trial. Petitioner also provides an "affidavit" from a Ronald Coker, which is signed not by Ronald Coker but by Petitioner himself. ECF No. 1-5. The so-called affidavit states that Ronald Coker was present on the date of the shooting for at least 4 hours on the street where the Alpine Tavern was located and he never saw Petitioner in the vicinity of the Alpine Tavern. ECF No. 1-5.

#### 1. Gateway claim of actual innocence versus freestanding claim of actual innocence.

There are two types of claims of actual innocence or miscarriage of justice: 1) a gateway claim and 2) a freestanding claim. A gateway claim is a claim of innocence that seeks to have a procedural default forgiven. In Schlup v. Delo, 513 U.S. 298 (1995), the United States Supreme Court explained that an actual innocence claim, in the context of seeking to have a procedural

default "forgiven" so as to have the procedurally defaulted claims reviewed on the merits, is a "gateway" claim. In other words, the claim of actual innocence in the Schlup context is not a claim that "because I am actually innocent, by virtue of that fact alone I am entitled to federal habeas relief" but rather is a claim that contends "because I am actually innocent, the court should forgive my procedural default of the claim in the state courts (or in Petitioner's case, also my violation of the AEDPA statute of limitations)[6] and consider my procedurally barred claims on their merits." Schlup, 513 U.S. at 315. The Court in Schlup contrasted such a "gateway" claim to a "freestanding" claim of actual innocence such as was raised in Herrera v. Collins, 506 U.S. 390 (1993), where the claim was precisely "because I am actually innocent, by virtue of that fact alone, I am entitled to federal habeas relief."

**2. Petitioner fails to establish a gateway claim of actual innocence.**

In McQuiggen, the United States Supreme Court declared:

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S., at 329, 115 S.Ct. 851; *see House*, 547 U.S., at 538, 126 S.Ct. 2064 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S., at 332, 115 S.Ct. 851.

---

[6] The United States Supreme Court has held that there is an "actual innocence" exception to the AEDPA statute of limitations such that where a federal habeas petitioner makes an adequate showing of actual innocence, the federal habeas court may consider the habeas petition on the merits notwithstanding that the Petition violates the one year AEDPA statute of limitations. McQuiggen v. Perkins, 133 S.Ct. 1924 (2013).

11

<u>Id.</u> at 1928. In order to successfully invoke the "actual innocence" exception, which is also known as, the "miscarriage of justice" exception[7] a petitioner must:

> satisfy a two-part test in order to obtain review of otherwise procedurally barred claims. First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial. *Schlup*, 513 U.S. at 327-28. Second, the petitioner must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id*. at 327.

<u>Amrine v. Bowersox</u>, 238 F.3d 1023, 1029 (8th Cir. 2001), <u>cert</u>. <u>denied</u>, 498 U.S. 881 (2001). It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that. In <u>Schlup</u>, the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." <u>Schlup</u>, 513 U.S. at 329.[8]

Petitioner's evidence fails to show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." <u>Amrine</u>, 238 F.3d at 1029. The focus under the "actual innocence" exception is on establishing actual innocence as opposed to legal innocence, and so this Court is not bound to consider only the evidence introduced at a habeas petitioner's criminal trial. See <u>Schlup</u>, 513 U.S. at 327 - 28, wherein the court held that "[i]n assessing the adequacy of petitioner's showing [of actual innocence], therefore, the district court

---

[7] <u>Lenhart v. Rozum</u>, Civ.A. No. 10–218J, 2014 WL 807995, at *16 (W.D. Pa., Feb. 28, 2014) ("The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard, which applies 'when a constitutional violation probably has caused the conviction of one innocent of the crime.'") (quoting, <u>United States v. Sorrells</u>, 145 F.3d 744, 749 n.3 (5th Cir. 1998)).

[8] The first prong of the two part test, i.e., whether the proffered evidence is new, provides that "evidence is new only if it was not available at trial[.]" <u>Amrine</u>, 238 F.3d at 1028. Because we find that Petitioner's evidence fails under the second prong of the two part test, we do not address the first prong.

is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on 'actual innocence' allows the reviewing [habeas] tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial." Indeed, the Supreme Court explained more fully what it meant by allowing a court to consider evidence not heard at trial when it declared that

> The habeas court must make its determination concerning the petitioner's innocence "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial."

Id. at 328. In conducting this analysis, this court is guided by the principle that a "district court must not use its independent judgment as to whether, in light of new evidence, reasonable doubt exists. Rather, the district court must 'make a probabilistic determination about what reasonable, properly instructed jurors would do.'" Abu-Jamal v. Horn, No. Civ.A. 99-5089, 2001 WL 1609690, at *9, (E.D. Pa. Dec. 18, 2001), aff'd, 520 F.3d 272 (3d Cir. 2008), *cert. granted and judgment vacated on other grounds by*, 558 U.S. 1143 (2010).

Hence, we consider the evidence of the affidavits. We note however that such affidavits were not given until, at the earliest, May, 2011, which is when Gaines is alleged to have made the statements about Hooten. The United States Supreme Court in McQuiggen specifically permitted federal habeas courts, in assessing the credibility of new evidence, to consider any delay in presenting evidence of actual innocence. McQuiggen, 133 S.Ct. at 1936 ("The timing of such a petition, however, should seriously undermine the credibility of the actual innocence claim.").

We find that the timing of the affidavits, coming more than ten years after the trial, seriously undermines the credibility of the actual innocence claim. In this vein, we agree with the PCRA trial court which rejected the affidavit of Gaines as follows:

13

> Darrale Gains made statements to the police prior to trial that the Defendants and the victim, Ronald Minnefield, were together at the time of the shooting. Those statements were consistent with Hooten's testimony at the Coroner's Inquest. Gains, however, never testified at trial. It wasn't until 14 years after the homicide that Gaines allegedly said that his prior statements were false, and instead implicated Hooten in the shooting. Considering the lengthy delay between the homicide, and Gaines change of statement and his now implication of the deceased Hooten, this Court finds that a new trial would not likely result in a different verdict. There is also an absence of any corroborating evidence that Hooten was the real killer. Finally, the evidence introduced at trial supports the prior statements made by Gaines to the police.

ECF No. 11-4 at 38. We agree with the foregoing and conclude that the different story now told by Gaines and reiterated by the other prisoners is simply not credible in the face of the other evidence of Petitioner's guilt.

We now consider the evidence of Petitioner's guilt. The evidence of Petitioner's guilt includes testimony of Hooten at the preliminary hearing which was read into evidence at Petitioner's trial. The evidence also includes the testimony of Robert Robinson who testified that Petitioner told him outside the Alpine Tavern on the night of the shooting that he (i.e., Petitioner) was looking to obtain money any way he could. The evidence also includes the presence of the gun, which shot the victim, near a bed in the home where Petitioner was staying.

Weighing all of this evidence of Petitioner's guilt against the belatedly filed affidavits, and, in the context of the whole record before this Court, and making "a probabilistic determination about what reasonable, properly instructed jurors would do" Goldblum v. Klem, 510 F.3d 204, 226 (3d Cir. 2007) (quoting Schlup, 513 U.S. at 329), we find that Petitioner failed to carry his burden to show it was more likely than not that no reasonable juror would have found Petitioner guilty in light of the evidence of the affidavits.

### 3. Petitioner fails to make a free standing claim of actual innocence.

Having failed to establish his gateway claim of actual innocence, Petitioner cannot establish a free standing claim of actual innocence. As has been previously explained:

> The burden of showing actual innocence in order to make out a freestanding claim of actual innocence is heavier and higher than the burden to make out a gateway claim of actual innocence within the meaning of *Schlup*. Hence, this Court's conclusion above that Petitioner did not meet the lesser gateway standard under *Schlup v. Delo*, resolves the free standing claim of innocence under the more stringent standard of *Herrera. See Schlup v. Delo*, 513 U.S. at 316–317; *Thomas v. Taylor*, 170 F.3d 466, 473 (4th Cir.1999) ("Regardless of whether we apply the more lenient standard of *Schlup* or the stricter standard of *Herrera* ..."); *Parham v. Kelm*, ——F. App'x ——, ——, 2012 WL 4040285 (3d Cir.2012) ("a petitioner carries a heavier burden to succeed on substantive [*i.e.,* free standing] claim of actual innocence than the already high burden imposed by a gateway claim."). Accordingly, Petitioner has failed to sustain his burden to establish a gateway claim of actual innocence pursuant to *Schlup* and *a fortiori,* has failed to sustain his burden to establish a free standing claim of actual innocence under *Herrera.*

Givens v. Kelly, No. CIV.A. 12-365, 2013 WL 1136739, at *10 (W.D. Pa. March 18, 2013) Accordingly, Ground Three, whether treated as a gateway claim or a free standing claim of actual innocence, fails to merit the grant of habeas relief in this Court.

As none of the Grounds raised by Petitioner merits relief, the Petition will be denied.

## V. CONCLUSION

For the reasons set forth herein, the Petition is denied. Because we find jurists of reason would not find the foregoing debatable, we deny a certificate of appealability.

BY THE COURT:

*s/ Maureen P. Kelly*
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Date: July 20, 2016

cc: All Counsel of Record via CM-ECF

DAVALIN CHARLES BENNETT
DX-9353
S.C.I. Houtzdale
P.O.Box 1000
Houtzdale, PA 16698-1000